UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT EVELAND, et al.,          )
                                 )
           Plaintiffs,           )
                                 )
       v.                        )          No. 4:22 CV 1068 CDP
                                 )
CITY OF ST. LOUIS, et al.,       )
                                 )
           Defendants.           )

## MEMORANDUM AND ORDER

Plaintiffs are seventeen City of St. Louis firefighters who claim that the City wrongfully prevented Fire Chief Dennis Jenkerson from promoting them to Battalion Chief or Fire Captain.  Their complaint alleges a violation of their due process rights and breach of contract, relying, in part, on a 2017 settlement agreement between the City and an organization representing Black firefighters. They seek a preliminary injunction ordering the City to cease interfering in the promotion process and to effectuate their promotions.  I held hearings on the preliminary injunction motion on April 17 and 24, 2023, and both sides presented evidence and argument.

This is a legally complicated case.  There is a possibility that plaintiffs may prevail on the merits of their claim, but they face many legal obstacles that they may not be able to overcome.  In any event, I will deny the motion for a

preliminary injunction because plaintiffs have not shown that they are threatened with immediate and irreparable harm or that any harm to them outweighs the harm that will result to the City if I were to grant the preliminary injunction.

## Factual and Procedural Background

Promotions within the St. Louis Fire Department are governed by the City's Civil Service Plan.  When an opening for a promotion occurs, the Fire Chief may submit a "Personnel Requisition" form to the Director of Public Safety, who then verifies that the vacancy exists and the promotion is covered by the department's Table of Organization, which shows positions authorized by that year's budget. Once the Director of Public Safety approves the requisition, the Director of Personnel sends the Fire Chief, who is the "appointing authority" under the Civil Service Plan, a list of the six eligible applicants who scored the highest on the most recent promotional exam.  The Fire Chief interviews the six candidates and selects one of them.  The current Fire Chief, Dennis Jenkerson, has always selected the person who scored highest on the exam.

The last promotion examination for Fire Captain and Battalion Chief was conducted in 2013.  In 2015, the Firefighters Institute for Racial Equality (F.I.R.E.) sued the City alleging that the test discriminated against Black promotional candidates. *Green v. City of St. Louis*.  (4:15CV1433 RWS). The parties to the case reached a settlement on August 10, 2017, and the case was dismissed.

- 2 -

(4:15CV1433 RWS at ECF 72-1.)[1]  That agreement provided that the 2013 eligible lists for Captain and Battalion Chief would continue to be used for promotions until new lists were developed based on a new promotional exam.  The City agreed it would not intentionally delay promotions in anticipation of new promotional exams nor intentionally delay the next exam.  The City also promised to use its best efforts to hold the next exams by December of 2018, and to schedule future exams approximately three years after certification of the eligible lists from the previous exams.

As of today, no new exams have been given.  The reasons for the delay are not entirely clear from the record; a city witness testified that initially the Board of Aldermen failed to budget money for a consultant to prepare the test and that the COVID pandemic caused additional delays.  Witnesses also testified that the Fire Department has now hired a consultant who has developed (or is in the last stages of developing) a new test, and the City hopes to have the test administered and to have results certified within seven or eight months.

---

[1] The fire department's promotional exams have been the subject of litigation for decades.  *See Stewart v. City of St. Louis*, No. 4:04CV885 RWS, 2006 WL 1663023, at *1 (E.D. Mo. June 9, 2006) (collecting cases), aff'd, 532 F.3d 939 (8th Cir. 2008).  F.I.R.E. has repeatedly alleged that the promotional exams are racially discriminatory.  *See, e.g., Firefighters Inst. for Racial Equal. v. City of St. Louis, Mo.*, 616 F.2d 350 (8th Cir. 1980).  White firefighters have alleged that the exams have been illegally reweighted in favor of Black candidates.  *St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Loc. 73 v. City of St. Louis, Mo.*, 96 F.3d 323 (8th Cir. 1996).  Accordingly, one of the goals of the Settlement Agreement was "[a]voiding litigation regarding future Exams."  (ECF 16-1 at p. 2.)

In January of 2022 the Director of Public Safety began denying the Fire Chief's requisition requests to fill vacancies in the department and informed him that no promotions would be made until a new exam produced new eligible lists. Witnesses testified to several reasons for the moratorium: the Director wanted to review the entire command structure at the department, the 2013 list was too old and did not give newer employees a chance to apply for promotion, the candidates remaining on the 2013 eligibility list scored relatively low on the test (although they all had passing scores), and a new test was in the process of being developed.

Because someone needs to perform the supervisory work left by the existing vacancies, Chief Jenkerson appointed sixteen of the seventeen plaintiffs in this case to serve as "Acting" Fire Captains and Battalion Chiefs.  Chief Jenkerson testified that he appointed plaintiffs to these roles because they were the highest scoring candidates on the 2013 exam and that he would have promoted them if the Direct of Public Safety approved his requisition requests.  He also testified that he will recommend the remaining plaintiff for the next vacancy that occurs.

Plaintiff Robert Eveland has been serving as Acting Battalion Chief since January 30, 2022; his position was the first vacancy that the Director of Public Safety refused to fill.  The other plaintiffs began their Acting positions between January of 2022 through February of 2023.  While serving in these acting roles,

none of the plaintiffs receive the pay or benefits they would be receiving if they had actually been promoted to those positions.

Count I of plaintiffs' Second Amended Complaint alleges a violation of 42 U.S.C. § 1983.  Count II alleges breach of contract based on the same facts. Plaintiffs initially brought this action in October of 2022; they filed the Second Amended Complaint (the currently operative complaint) on January 4, 2023.[2]

Plaintiffs filed their motion for preliminary injunction on March 27, 2023. After consulting with counsel, the Court set the preliminary injunction hearing for Monday, April 17, 2023.  On April 14, 2023 (the Friday before the hearing), the City and F.I.R.E. signed a "First Amendment to Settlement Agreement" bearing the caption of the *Green* case, 4:15CV1433 RWS.[3]  The amendment states that, because of the passage of time, the eligibility list from 2013 would no longer be used.  The amendment noted that, at the time the Settlement Agreement was entered, the parties expected a new exam and eligibility list would be developed by 2018, but that did not happen.  As a result, "firefighters who joined the Department

---

[2] In addition to suing the City, plaintiffs named F.I.R.E. as a defendant.  Plaintiffs stated they did so "because Plaintiffs believe it is an interested Party in this controversy, although no relief is sought from F.I.R.E."  (ECF 16 at p. 2.)  F.I.R.E. has entered an appearance and filed an answer but did not participate in the preliminary injunction hearing.

[3] Although plaintiffs in this case attached a copy of that amendment to a brief filed on April 17 (ECF 29), as of this date it has not been filed in the *Green* case.

since the 2013 promotional exam have not had the opportunity to be considered"

for promotion.  (ECF 29-1 at p. 2.)

## Discussion

A preliminary injunction is an "extraordinary remedy." *Ng v. Board of*

*Regents of University of Minnesota,* 64 F.4th 992, 997 (8th Cir. 2023).  The Court

must consider the following factors when determining whether to grant this

extraordinary remedy:  "(1) the threat of irreparable harm to the movant; (2) the

state of balance between this harm and the injury that granting the injunction will

inflict on other parties litigant; (3) the probability that movant will succeed on the

merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.,*

640 F.2d 109, 114 (8th Cir. 1981).  No single factor is dispositive, and all of them

must be balanced.  *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v.*

*Schimmel*, 128 F.3d 689, 692 (8th Cir. 1997).  As the parties requesting injunctive

relief, plaintiffs bear the "complete burden" of proving that these factors warrant

an injunction.  *Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.

1987).

## 1. <u>Likelihood of Success on the Merits</u>

The movant's likelihood of success on the merits has been referred to as "the

most important of the four factors," although it is "insufficient on its own."

*Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011).

"Ordinarily, a movant seeking a preliminary injunction need only establish a 'fair chance' of prevailing on the merits." *Doe 1 v. City of Apple Valley,* 487 F. Supp. 3d 761, 767 (D. Minn. 2020).  However, a movant must meet a "more rigorous standard" when seeking to enjoin a "duly enacted statute." *Planned Parenthood v. Rounds,* 530 F.3d 724, 731-32 (8th Cir. 2008).  Here, because there is no challenge to actions involving "the full play of the democratic process," *D.M. by Bao Xiong v. Minnesota State High Sch. League*, 917 F.3d 994, 1000 (8th Cir. 2019), the less-rigorous "fair chance" standard applies.

The facts of this case appear straightforward, but the legal issues are intricate.  Plaintiffs' § 1983 claim is particularly troublesome.  To prevail on their claim, plaintiffs must show that the City violated a right secured by federal law.  Although the amended complaint refers only to a substantive due process violation, (ECF 16 at p. 5), plaintiffs' briefs and argument indicate that they are claiming both procedural and substantive due process violations.[4]  The procedural component of the due process clause "provides the familiar guarantee of fair procedures, prohibiting the deprivation of life, liberty, or property by a State without due process of law." *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869,

---

[4] The second amended complaint also seeks relief under § 1983 for violations of the Fifth Amendment, the Missouri Constitution, and state contract law.  But § 1983 provides a remedy only for violations of rights secured by federal statutes or the Constitution. *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 1990).  And the Fifth Amendment is inapplicable to non-federal government defendants. *Hess v. Ables*, 714 F.3d 1049, 1053 (8th Cir. 2013).

872-73 (8th Cir. 2007).  The substantive component "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' "  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  For either claim, plaintiffs must show they were deprived of a property or liberty interest protected by the Fourteenth Amendment.  *See Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445-46 (8th Cir. 1995) ("Analysis of either a procedural or substantive due process claim must  begin with an examination of the interest allegedly violated.")

The Eighth Circuit has held that an employee does not have a protected interest in a promotion if his government employer may exercise discretion when making promotion decisions.  *See Meyer v. City of Joplin*, 281 F.3d 759, 762 (8th Cir. 2002) (collecting cases).  Conversely, a hiring process that limits the discretion of the employer may give rise to a protected property right.  For example, in *Paskvan v. City of Cleveland Civil Services Commission*, the Sixth Circuit found that a police officer sufficiently alleged a protected property interest in promotion to sergeant because he alleged he was the highest scorer on the promotion exam and his employer had never deviated from its practice of promoting the candidate with the highest score.  946 F.2d 1233, 1236 (6th Cir. 1991).  Since then, several other courts have found that mutual understandings about a government

employer's promotion practices may support a property interest.  *See Jones v.*
*Hernandez*, No. 07-2042, 2007 WL 4269052, at *2 (10th Cir. Dec. 6, 2007)
("Settled hiring practices, however, can reveal that discretion is illusory."); *Otero*
*v. Colligan*, No. CIV.A. 399CV2378WIG, 2006 WL 1438711, at *10 (D. Conn.
May 17, 2006).  *See generally Perry v. Sindermann,* 408 U.S. 593, 601 (1972)
(property interests include "such rules or mutually explicit understandings that
support his claim of entitlement to the benefit[.]")

Here, the Civil Service Rules give the Fire Chief discretion to select from six
certified candidates on the eligibility list.  Nevertheless, plaintiffs argue they have
a property interest in the promotions because, like the plaintiff in *Paksvan*, they are
the highest scorers on the 2013 promotional exam and Chief Jenkerson has an
unwavering practice of promoting the candidate with the highest score on the
promotional exam—Chief Jenkerson testified that he intended to promote them
when he submitted the requisition requests to the Director of Public Safety.  And
they argue the Settlement Agreement and the Civil Service Rules prohibited the
Director from denying these requests in anticipation of new exams.

To the extent plaintiffs rely on the Settlement Agreement as a source of their
property interest, there are several problems.  First, it is not clear that plaintiffs
may enforce the agreement: only two plaintiffs were named plaintiffs in the *Green*
case, and even they were not signatories to the settlement agreement.  Plaintiffs

argue they can still enforce the agreement as third-party beneficiaries. *See Hilliker Corp. v. Watson Prop., LLC*, No. ED 109549, 2022 WL 97284, at *2 (Mo. Ct. App. Jan. 11, 2022). But to be a third-party beneficiary under Missouri law, the terms of the agreement "must clearly and directly express an intent to benefit an identifiable person or class," *id.* (citing *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 260 (Mo. banc 2002)), and plaintiffs have not shown that the Settlement Agreement does so. Nothing in that agreement guaranteed promotions to all the people on the list. Indeed, it contemplated that by 2018 a new test would be given and a new list would be certified, so that anyone not promoted by that time—which would include all the plaintiffs in this case— would not receive any benefit from that agreement.

Moreover, most government contracts do not create property interests protected by the Due Process Clause. *Omni Behav. Health v. Miller*, 285 F.3d 646, 652-53 (8th Cir. 2002). The Eighth Circuit has only recognized two categories of exceptions to this rule:

> [T]he first type arises where the contract confers a protected status, such as those "characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits." The second, albeit related type of property interest arises where the contract itself includes a provision that the state entity can terminate the contract only for cause.

*Unger v. National Residents Matching Program,* 928 F.2d 1392, 1399 (3d Cir. 1991) (quoting *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988)) (quoted approvingly by *Omni*, 285 F.3d at 652.)  It does not appear that the Settlement Agreement falls into either of these categories.

Even assuming plaintiffs could show a protected property interest in the promotions, they must still show that the City has deprived them of that interest without due process of law.  *Gordon v. Hansen,* 168 F.3d 1109, 1114 (8th Cir. 1999).  For a claim of procedural due process, plaintiffs must point to some process that was due to them.  At the hearing, plaintiffs' counsel argued that because the Civil Service Rules provide that the "appointing authority" is the Fire Chief and not the Director of Public Safety, plaintiffs' right to due process was violated when the Director effectively vetoed their promotions.  Rather than arguing that they were entitled to some pre-deprivation process (such as a hearing), they argue that this alleged violation of due process simply entitles them to be promoted.  But Missouri case law recognizes that the Fire Chief's decision-making power is subject to oversight by the Director of Public Safety.  In *George v. Civil Service Commission of City of St. Louis*, the Missouri Court of Appeals explained:

> [A]rticle XVII charges the department of personnel to identify candidates based on merit, and rule VII § 4 [of the Civil Service Plan] gives discretion to the appointing authority—here, the fire chief—to promote from that pool. . . . It does not follow, however, that such discretion is free from oversight by a superior in the executive branch. . . . [T]he discretion conferred upon division-level appointing

> authorities under civil service rule VII § 4 does not supersede the
> authority of the director of public safety . . . to direct [the fire chief] to
> perform his duty to fill vacancies in the fire department.

318 S.W.3d 266, 270-71 (Mo. Ct. App. 2010).  In that case, the Missouri Court

agreed that the City could demote the Fire Chief when he refused to issue

promotions directed by his superior.

Plaintiffs have not shown that they have a fair chance of prevailing on their

substantive due process claim either.  "To establish a violation of substantive due

process rights by an executive official, a plaintiff must show (1) that the official

violated one or more fundamental constitutional rights, and (2) that the conduct of

the executive official was shocking to the 'contemporary conscience.' " *Flowers v.

City of Minneapolis, Minn*., 478 F.3d 869, 873 (8th Cir. 2007) (quoting *County of

Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)).  Fundamental rights are those

"deeply rooted in this Nation's history and tradition . . . and implicit in the concept

of ordered liberty, such that neither liberty nor justice would exist if they were

sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal

citations omitted).   When determining whether a claimed right is fundamental,

courts require "a 'careful description' of the asserted fundamental liberty interest."

*Id.* (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993)).

Plaintiffs do not attempt to carefully describe the asserted fundamental

liberty interest.  Nor do they show how a property right to specific promotions is

deeply rooted in the Nation's history and tradition and implicit in the concept of ordered liberty.  Even courts that have found a protectable property interest in promotion have declined to find that the interest rises to such a level.  *See Paskvan*, 946 F.2d at 1236 ("We conclude that there is no substantive due process right involved in this claim of failure to carry out a purported understanding about promotion procedures."); *Charles v. Baesler*, 910 F.2d 1349 (6th Cir. 1990) ("State-created rights such as Charles' contractual right to promotion do not rise to the level of 'fundamental' interests protected by substantive due process.").

In short, plaintiffs have some arguments that potentially could succeed on the merits, but I cannot conclude that they have shown a "fair chance" of prevailing.

## 2. Irreparable Harm

"Injunctive relief is improper absent a showing of a threat of irreparable harm."  *Roudachevski*, 648 F.3d at 706.  "[F]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." *Phyllis Schlafly Revocable Trust v. Cori, 924 F.3d 1004, 1009* (8th Cir. 2019) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 320 (8th Cir. 2009)); *H&R Block, Inc. v. Block, Inc.,* 58 F.4th 939, 951 (8th Cir. 2023).

Plaintiffs argue that any ongoing violation of a constitutional right is an irreparable harm as a general matter.  Courts have agreed with this proposition in

certain cases.  *See, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Planned Parenthood of Minnesota, Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977).  But these courts have also found that a harm that can be remedied in the ordinary course of litigation is not irreparable.  As the Supreme Court explained in *Sampson v. Murray*, "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  415 U.S. 61, 90 (1974).  Thus, even constitutional claims alleging wrongful termination or wrongful failure to promote do not merit preliminary injunctive relief when they can be remedied with backpay and reinstatement in the ordinary course of litigation.  *See, e.g., Roberts v. Van Buren Pub. Sch.*, 731 F.2d 523, 526 (8th Cir. 1984)  (affirming denial of preliminary injunction ordering the plaintiff's reinstatement because reinstatement and backpay would offer complete remedy of due process claim); *Hale v. Wood*, 89 F.3d 840 (8th Cir. 1996) (same for due process and equal protection claims).

Plaintiffs' second category of harms—loss of seniority rights and prestige—also fail to show that they are threatened with irreparable harm.  Eveland testified that the City's failure to promote him deprived him of seniority, which in turn affects his vacation picks, days off, access to training seminars, and ability to be promoted to the next rank.  But if plaintiffs prevail on their claims, the Court can

- 14 -

fashion an order that restores their seniority rights.  *See Adams v. City of Chicago*, 135 F.3d 1150, 1154-55 (7th Cir. 1998).  And plaintiffs do not identify a harm they will suffer unless they immediately receive those seniority rights.  For example, they do not provide evidence or even argue that they may be ineligible to compete for any specific promotions that they would otherwise be eligible for if they were immediately promoted.  Thus, any harm inflicted by lost seniority is not irreparable.[5]

I am not persuaded that the harm to plaintiffs' reputation by serving in acting roles rather than bona fide roles is irreparable either.  First, it is not clear to me that the preliminary injunction they seek would remedy this harm.  At the preliminary injunction hearing, Plaintiff Tim Schultz testified that serving in an acting role indicates to his peers that he is not worthy of the bona fide role, but then stated that, if plaintiffs prevail, they will be known as the captains that got their promotions from litigation rather than from merit.  Moreover, Eveland testified that acting officers are treated like they are just filling in or lack the authority to drive long term change.  It is difficult to see how the preliminary

---

[5] Plaintiffs' claims are distinguishable from *Firefighters Inst. for Racial Equal. v. City of St. Louis, Mo.*, for this reason.  616 F.2d 350 (8th Cir. 1980).  In that case, the City's promotion of 23 white firefighters using an invalid promotional exam delayed the promotion of black candidates, which in turn affected their ability to compete for promotions to the next highest rank.  Here, the City has blocked promotions until a new eligible list can be certified, so plaintiffs' desired positions will not be displaced by other candidates.  Because plaintiffs can be retroactively promoted to these positions, any delay during the course of litigation is reparable.

injunction they seek—an order promoting them to their desired positions pending final disposition of the case—would make their positions appear less precarious.

But even if an order granting plaintiffs these promotions could remedy their alleged reputational harm, this harm could be remedied in the ordinary course of litigation.  For example, in *Sampson*, the Supreme Court rejected the appellant's vague claims of reputation harm caused by her wrongful discharge because "no significant loss of reputation would be inflected by procedural irregularities in effectuating respondent's discharge, and . . . whatever damage might occur would be fully corrected by an administrative determination requiring the agency to conform to the applicable regulations."  415 U.S. at p. 91.  If an order to promote plaintiffs could rehabilitate their reputation, whatever reputational harm plaintiffs have suffered will likewise be remedied should plaintiffs prevail on their claims.

Plaintiffs have therefore failed to make the requisite showing of irreparable harm.

### 3.  Balance of the Harms and the Public Interest

Plaintiffs' failure to show that they will suffer an irreparable harm is a sufficient ground upon which to deny their motion.  But the final two factors, the balance of the harms and the public interest, do not militate in favor of an injunction either.

Plaintiffs offer two arguments on these factors.  The first is that it is always in the public's interest to enforce government contracts and to prevent a violation of a person's constitutional rights.  But as explained above, plaintiffs have not shown a likelihood of prevailing on their constitutional claims, and it is unclear that they may enforce the Settlement Agreement.

Plaintiffs also argue that their promotions will not harm the City because they are authorized by the City's budget.  At the preliminary injunction hearing, plaintiffs argued that the Court can simply allow the City to demote plaintiffs and recollect plaintiffs' increase in salary if plaintiffs do not ultimately prevail on their claims.

I am not convinced that unwinding the promotions, recouping the wages, and reducing the pension and other benefits would be so simple.  Demoting the plaintiffs and recalculating their pay, benefits and deductions would pose an administrative nightmare for the City.  I am also dubious that plaintiffs would simply set aside their increased salary in case they have to pay it back to the City, as plaintiffs' counsel intimated at oral argument.  And if they were able to simply set this money aside until they prevailed on their claims, it is difficult to see how this relief would be any different from final disposition of their claims in the ordinary course of litigation.

- 17 -

In conclusion, I am sympathetic to plaintiffs' predicament.  They have been performing the duties of supervisory positions without supervisory remuneration— many have been doing so for over a year.  But they have not yet shown that they are likely to succeed on their claims or that they will be irreparably harmed unless they immediately receive promotions and backpay.  And any harm to plaintiffs caused by waiting for the resolution of their claims is outweighed by the potential administrative burden to the City if they did not ultimately prevail.  Thus, a preliminary injunction is unwarranted here.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' Motion for Preliminary Injunction [18] is **DENIED**.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of May, 2023.