**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EVELAND, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-01068 CDP |
| | ) | |
| CITY OF ST. LOUIS, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant City of St. Louis and Charles Coyle ("Defendants") respectfully move the Court for an order entering summary judgment on behalf of Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure. In support thereof, Defendants state:

**I.       INTRODUCTION**

Defendants' Motion for Summary Judgment asks this Court to 1) determine that Plaintiffs do not have sufficient evidence of a federally protected right because they are not and were not ever entitled to a job promotion as a matter of law, either by virtue of the Settlement Agreement or otherwise; 2) determine that Plaintiffs do not have third-party beneficiary standing to sue the City in contract; 3) determine that Plaintiffs do not have sufficient evidence of a procedural or substantive due process claim 4) determine that the 2023 Amended Settlement Agreement is valid; 5) determine that Plaintiffs' claim to only potential job promotions, at best, do not qualify as private property for a cause of action under the Takings Clause; and 6) determine that the original

1

settlement agreement cannot provide sufficient evidence to support Plaintiffs' unconstitutional impairment of contract claim.

Plaintiffs, who are firefighters currently employed by the City, seek promotions to either Fire Captain or Fire Battalion Chief. Defendants' Statement of Uncontroverted Material Facts ("SF"),  ¶¶  17-19.  Plaintiffs  allege  that  by  virtue  of  the  Agreement they are entitled to be promoted, however, none of the Plaintiffs were parties to the Agreement, and the Agreement does not guarantee promotions for any particular employee. SF ¶¶ 9, 20.  As relevant here, in the Agreement the parties agreed to: (a) settle and resolve all claims and potential claims related to the Defendant City of St. Louis's 2013 promotional examinations for the ranks of Captain and Battalion Chief; (b) establish agreed-upon future promotional examination practices; including (1) ensure that future promotional examinations are valid and fair and do not unlawfully discriminate against any promotional candidate on the basis of race; (2) ensure transparency in the Exam Process; (3) make reasonable efforts to ensure future Exams are fair to the broader community; and (4) avoid litigation regarding future Exams. SF ¶ 15. The Agreement stipulates that the current lists will continue to be used for promotions until new eligible lists are established, but it does not provide for any particular employee to be promoted, nor does it dictate a timeline for the filling of vacancies or the making of promotions. *Id.*

The Agreement also contemplated that examinations for Captain and Battalion Chief would be administered by December 2018, and approximately every 3 years thereafter, subject to budgetary or similar administrative constraints, and contingent upon availability of City funds. SF ¶ 21. Examinations were not held in December 2018 because the Department of Personnel's budget to pay for the testing consultant was cut. SF ¶ 22. Consequently, no new lists were generated, and the 2013 lists continued to be used until early 2022. SF ¶ 24. In early 2022, then-Director of Public

Safety Dan Isom decided to halt promotions until new lists were prepared for both Fire Captain and Fire Battalion Chief and current Director of Public Safety Charles Coyle concurred with this decision because in his opinion, using 10-year-old lists to make promotions is problematic because the individuals being promoted did not score as highly on the test and therefore are potentially not the best-qualified candidates. SF ¶¶ 26-28.

On April 14, 2023, the First Amendment to Settlement Agreement ("Amended Agreement") in the *Percy Green* case was executed. SF ¶ 31. The parties to the Amended Agreement acknowledged that no new exams had yet been administered, and therefore agreed "the individuals currently remaining on the Eligible Lists for Fire Captain and Fire Battalion Chief may no longer be the best available candidates for promotion to these positions." SF ¶ 33. Accordingly, the parties agreed to discontinue the use of the 2013 eligible lists for Fire Captain and Fire Battalion Chief. SF ¶ 34. However, all the current Plaintiffs will have the opportunity to take the new examinations and will have the opportunity to be promoted if they score highly enough on the examination. SF ¶ 30.

Defendants are entitled to summary judgment because Plaintiffs have not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find that they were entitled to a job promotion, that the Defendants violated their civil rights by not promoting them to Fire Captain or Fire Battalion Chief, that they are third-party beneficiaries under the Agreement, and that the 2023 amendment to the Agreement is not valid.

## II.    <u>FACTS</u>

Defendants incorporate by reference the facts asserted in the accompanying Statement of Uncontroverted Material Facts ("SF") in support of this motion.

III.     <u>STANDARD OF REVIEW – SUMMARY JUDGMENT</u>

Under the Federal Rules, a court shall grant summary judgment if there is no genuine issue

of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56.

The moving party bears the initial burden. *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir.

1997). After the moving party discharges this burden, the non-moving party must do more than

show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio

Corp*., 475 U.S. 574, 586 (1986). Instead, the non-moving party must set forth specific facts

showing sufficient evidence in its favor to allow the trier of fact to return a verdict for the non-

movant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986). Furthermore, "to survive a motion for summary judgment, the non-moving

party must be able to show sufficient probative evidence that would permit a finding in his favor

on more than mere speculation, conjecture, or fantasy." *Sensient Technologies Corp. v.

SensoryEffects Flavor Co.*, 613 F.3d 754, 762 (8th Cir. 2010).

IV.     <u>ARGUMENT</u>

A.     **Count I: Defendants are entitled to summary judgment on Count I because
       Plaintiffs do not have a federally protected right, a required element of any 42
       U.S.C. § 1983 claim.**

To prevail on a § 1983 claim against a municipality, a plaintiff must set forth evidence

sufficient to establish that he suffered a deprivation of constitutional rights that was caused by the

implementation or execution of a policy, ordinance, or decision officially adopted or promulgated

by City officials. *Monell v. Dep't of Soc. Servs. of City of N.Y*., 436 U.S. 658, 694 (1978). The

threshold question on municipal liability under § 1983 is "whether there is a direct causal link

between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton

v. Harris*, 489 U.S. 378, 385 (1989). "This requires a plaintiff to show that the municipal policy

was 'the moving force [behind] the constitutional violation.'" *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "[R]igorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997). A crucial element of a § 1983 claim against a municipal defendant is that "municipality's legislative body or authorized decision maker has intentionally deprived plaintiff of a federally protected right." *Board of Cnty. Comm'rs of Bryan Cnty., Okl. V. Brown*, 117 S.Ct. 1382, 1389, 520 U.S. 397, 405 (U.S. 1997).

A government employee is, by virtue of the Fourteenth Amendment's Due Process Clause, "entitled to procedural due process only when he has been deprived of a constitutionally protected property or liberty interest." *Winegar v. Des Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 899 (8th Cir.) (citing *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972)), cert. denied, 513 U.S. 964, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994)). Under the Fourth Amendment, a seizure of property occurs when a government commits "meaningful interference with a person's possessory interests in that property." *Lesher v. Reed*, 12 F.3d 148, 150 (C.A.8 (Ark.),1994). Under federal law, "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 577, 92 S.Ct. at 2709. Property interests are not created by the Constitution. "[T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Id.*; *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). A property interest in employment therefore, can be created by statute, ordinance, or by an express or implied contract. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Courts have recognized a

private interest in retaining employment, but where, as here, Plaintiffs seek relief for due process-property interests in potential promotions, the court may not issue relief simply because the plaintiff was not hired in one job but remains as free as before to seek another, unless the plaintiffs show that they were deprived of 'liberty,' and that their "good name, reputation, honor, or integrity is at stake" because of the government's action. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515; *Wieman v. Updegraff*, 344 U.S. 183, 191, 73 S.Ct. 215, 219, 97 L.Ed. 216; *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817; *United States v. Lovett*, 328 U.S. 303, 316—317, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252; *Peters v. Hobby*, 349 U.S. 331, 352, 75 S.Ct. 790, 801, 99 L.Ed. 1129 (Douglas, J., concurring). *Cafeteria & Restaurant Workers v. MeElroy*, 367 U.S. 886, 898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230. And even if the court finds that the plaintiffs are deprived of a protected property interest, "the question [will remain] as to what process is due." *Goss*, supra 419 U.S. at 577, 95 S.Ct. at 738.

Here, Plaintiffs do not have a federally protected right and have no legitimate claim of entitlement to actually being promoted, and the court should find in favor of Defendants on Plaintiffs' 42 U.S.C. § 1983 violation of rights claim under the Fourth and Fourteenth Amendment. In their Third Amended and Supplemental Complaint, Plaintiffs allege that the City unlawfully frustrated their due-process protected property and liberty interests to be promoted. Plaintiffs further allege that they have been denied their rights to move up the Eligible List, and that the City did not fully comply with its obligations under the Settlement Agreement nor civil service rules. However, the Agreement nowhere entitles any of these particular Plaintiffs to be promoted to any particular position, and nor do the civil service rules of the City of St. Louis.

Accordingly, the Plaintiffs lack evidence sufficient to show the trier of fact that the City deprived them of either a possessory interest in property, or a legitimate claim of entitlement to property. Further, Plaintiffs have not alleged the City has unlawfully hindered them in seeking promotions because they have not alleged that: as discussed in the *Bd. of Regents v. Roth* the City's actions would (1) hinder them from seeking a similar position; (2) place their "good name, reputation, honor, or integrity" at stake; or (3) foreclose their freedom to take advantage of other employment opportunities. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437.

Plaintiffs have only made the assertion that they have not received more remunerative and prestigious positions because of Defendant's failure to promote them. The Agreement does not provide for nor guarantee that any particular Plaintiff will be promoted or will move up in rank on the Eligible List. Therefore, as employees of the City the only due process protected property interests the Plaintiffs have is the right to continued employment in their current positions.

Under Missouri law, they are entitled to notice and a hearing prior to demotion, suspension, or termination from their current positions; but no such actions are being alleged by the Plaintiffs. Yet, Plaintiffs seek to impose liability upon Defendants different—and more onerous—than that imposed by the statute and the entire body of case law. Furthermore, Plaintiffs cannot offer any evidence to show that the City had a policy or custom to deprive firefighters of their rights under the Fourteenth Amendment. Absent such a proof, the Defendants are entitled to judgment as a matter of law.

To allow Plaintiffs to proceed with a 42 U.S.C § 1983 claim for violation of their rights because they did not receive a promotion they are not entitled to would advance a theory not previously recognized or permitted by any court, and would clearly violate federal and Missouri law. Thus, the Court should grant summary judgment for the City on Count I of Plaintiff's Third

Amended and Supplemental Complaint because the Plaintiffs have not been deprived of a federally protected right and Plaintiffs cannot and will not be able to produce sufficient evidence to show a legitimate claim of entitlement to job promotions.

**B.     Count II: Defendants are entitled to summary judgment on Count II because Plaintiffs do not have third-party beneficiary standing to sue a municipality in contract, as allowing such a suit would not comply with the mandatory requirements of RSMo. 432.070.**

Plaintiffs attempt to sue Defendants for breach of contract, despite not having any written contract with Defendants. Instead, Plaintiffs attempt to assert third-party beneficiary status to a contract to which they are not parties. This theory is contrary to the spirit of Section 432.070, RSMo., which states:

> No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

The requirements set forth in this statute are mandatory and must be strictly complied with in order to bind the City. "Section 432.070 . . . requires the contracts made by a city must be in writing and duly executed as provided in said statute. The requirements of the statute are mandatory, not directory, and a contract not so made is void." *Burger v. City of Springfield*, 323 S.W.2d 777, 782 (Mo. 1959) (emphasis supplied) (citing *Kansas City v. Rathford*, 186 S.W.2d 570, 574 (Mo. 1945)); *Bride v. City of Slater*, 263 S.W.2d 22, 26 (Mo. 1953) (contracting provisions are "mandatory rather than directory" and, if not followed, "the contract is void");

*Donovan v. Kansas City*, 175 S.W.2d 874, 881–82 (Mo. banc 1943) (an *ultra vires* contract "is not voidable only, but wholly void, and of no legal effect").

There is no dispute that Plaintiffs were not parties to the Agreement. Local 73 intervened in *Green v. City of St. Louis*, as the certified exclusive bargaining representative of all firefighters and fire captains (which necessarily includes Plaintiffs in this matter). *See SF*. However, Local 73 ultimately declined to be a party to the Agreement. *See SF*.

Although none of the Plaintiffs were parties to the Agreement, they attempt to gain standing by asserting that they have third-party beneficiary rights under Missouri Law and the Settlement Agreement. SF ¶ 20. There is no statutory or case law that supports the premise that third-party beneficiary status is sufficient to overcome the statutory requirements of § 432.070. The purpose of § 432.070 is to protect municipalities. *Gill Const., Inc. v. 18th & Vine Auth.*, 157 SW.3d 699, 708 (Mo. App. W.D. 2005) (quoting *City of Kansas City v. Southwest Tracor, Inc.*, 71 S.W.3d 211, 215 (Mo.App. W.D.2002)), and that the requirements of § 432.070. § 432.070 does not protect "parties who seek to impose obligations upon government entities." *Id*.

"Unless a statute clearly abrogates the common law either expressly or by necessary implication, the common law rule remains valid." See, e.g., *Pub. Serv. Comm'n of State v. Mo. Gas Energy*, 388 S.W.3d 221, 230 (Mo. App. W.D. 2012). In this case, any contract liability for which the City may be held liable must fall within the statutory requirements of § 432.070, and those requirements should be strictly applied. There is no exception written into § 432.070 that a third-party beneficiary to a contract can ignore any of the mandatory requirements. Therefore, as Plaintiffs were not an original party to the contract, they cannot sue on the contract.

This argument has been applied to deny standing to third-party beneficiaries asserting claims against municipalities. In *Mays-Maune & Assoc., Inc. v. Werner Bros., Inc*., 139 S.W.3d

201 (Mo. App. E.D. 2004), the court held that the plaintiff could not maintain an action against the school district because the supplier failed to comply with the requirements of § 432.070. *Id*. at 208-09. A building materials supplier brought an unjust enrichment claim against a general contractor, subcontractor, and the school district. Specifically, the supplier had no written contract with the school district, and the court rejected the supplier's claim that by pleading the existence of a valid written contract between the school district and the general contract, it somehow satisfied the statute. *Id*.

And in *Catapult Learning, Inc. v. Bd. of Educ. of City of St. Louis*, No. 4:07CV935SNL, 2007 WL 2736271 (E.D. Mo. Sept. 17, 2007), the court held that because the school district was not a signatory to any written contract with the plaintiff, the court dismissed the breach of contract claim. In *Catapult Learning*, the plaintiff brought suit against a school board for alleged non-payment for services provided to a third-party defendant. The court dismissed the plaintiff's breach of contract claim the school district was not a signatory to any written contract with plaintiff and the plaintiff could not prove the existence of a written contract between it and the Board which complied with the mandatory requirements of § 432.070.

This Court should hold there is no third-party standing for Plaintiffs to sue under the Agreement. This Court "should unhesitatingly enforce compliance with all mandatory legal provisions designed to protect a municipal corporation and its inhabitants.'" *Southwest Tracor*, 71 S.W.3d at 215.

C.     **Count III: Defendants are entitled to summary judgment on Count III because Plaintiffs are not able to show sufficient evidence to establish a procedural or substantive due process claim.**

As detailed above in Section A, as a matter of law, public employees have no constitutionally protected right to be promoted.

Here, Plaintiffs have no legitimate claim of entitlement to actually being promoted, and as required in *Goss*, the question will remain as to what process is due. In their Third Amended and Supplemental Complaint, Plaintiffs allege that because promotions off the old eligible lists did not occur, Defendants have violated their due process rights. They allege they have due process-protected property interests in their places on the Eligible List. However, the original Agreement, nor the 2023 Amended Agreement, nowhere entitles any of these particular Plaintiffs to be promoted to any particular position. SF ¶¶ 15, 31. Accordingly, the Plaintiffs have failed to establish sufficient evidence that the City deprived them of either a possessory interest in property, or a legitimate claim of entitlement to property. Further, Plaintiffs have not alleged the City has unlawfully hindered them in seeking promotions because they have not alleged that: as discussed in the *Bd. of Regents v. Roth* the City's actions would (1) hinder them from seeking a similar position; (2) place their "good name, reputation, honor, or integrity" at stake; or (3) foreclose their freedom to take advantage of other employment opportunities for the City of St. Louis Fire Dept. and other fire departments. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437. Plaintiffs have only made the assertion that they have not been promoted because of Defendants failure to promote them. The original Agreement does not provide for nor guarantee that any particular Plaintiff will be promoted or will move up in rank on the Eligible List. Therefore, as employees of the City the only due process protected property interests the Plaintiffs have is the right to continued employment in the positions they currently hold. Under Missouri law, they are entitled to notice and a hearing prior to demotion, suspension, or termination from their current positions; but no such actions are being alleged in Count III.

Likewise, "[s]ubstantive due process requires the state action which deprives one of life, liberty or property, be rationally related to a legitimate state interest." *Lane v. State Comm. of*

*Psychologists*, 954 S.W.2d 23, 24 (Mo.App.E.D.1997). "To assert a substantive due process claim[,] one must establish that the government action complained of is 'truly irrational,' more than arbitrary, capricious, or in violation of state law." *Id*. at 24–25.

To that point, Plaintiffs lack sufficient evidence of a violation of state law or of any action taken by the City that was 'truly irrational'. Accordingly, if this Court finds that Plaintiffs should be afforded substantive due process, which they should not, the Plaintiffs have failed to show that Defendant's decision to stop using the 2013 eligible lists was a 'truly irrational' decision. Plaintiffs cannot do so because the decision to stop using the lists was rational. In the preliminary injunction hearing, Director Coyle voiced his concerns for using 10-year-old lists to make promotions because the individuals being promoted did not score as highly on tests and therefore are potentially not the best-qualified candidates. SF ¶ 28. The parties to the Amended Agreement have acknowledged that no new exams had yet been administered, and therefore agreed "the individuals currently remaining on the Eligible Lists for Fire Captain and Fire Battalion Chief may no longer be the best available candidates for promotion to these positions". SF ¶ 33. In fact, the City of St. Louis employs a civil service system, and the City's Charter requires all appointments and promotions in the Service to be made on the sole basis of merit and fitness, which is ascertained by means of competitive tests. SF ¶ 5. Therefore, this Court should find that even if the City's decision to update the eligible lists deprived the Plaintiffs of their job promotions, the City's decision was truly rational because the 2023 Amended Settlement Agreement provides for new eligible lists and allows all the current eligible candidates to take the test, and then the City could promote the best-qualified candidates from the new list on the basis of merit and fitness. For these reasons above, this Court should find in favor of Defendants that Plaintiffs do not have sufficient

evidence of a procedural or substantive due process claim under Missouri law to support a cause of action in Count III.

**D.      Count IV: Defendants are entitled to summary judgment on Count IV because the 2023 Amended Settlement Agreement is valid.**

Defendants incorporate by reference their response to Plaintiffs' Partial Motion for Summary Judgment and for the reasons stated therein, Count IV fails.

**E.      Count V: Defendants are entitled to summary judgment on Count V because Plaintiffs do not have sufficient evidence to show that their potential job promotions are private property.**

Article I, Section 26 of the Missouri Constitution provides that private property shall not be taken or damaged for public use without just compensation. This concept encompasses both direct takings, wherein the government formally takes land for public use via eminent domain, and inverse takings, where the government takes or damages land, sometimes unintentionally, without going through an official process. *United States v. Clarke*, 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980). When a taking occurs, the owner "is entitled to be put in as good a position pecuniarily as if his property had not been taken." *Olson v. United States*, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236 (1934). In order to succeed on a claim under the Missouri Constitution Article I, Section 28, plaintiff must show: (1) "property" (2) that was "taken" (3) for "private use" (4) without Appellants' consent. *Labrayere v. Bohr Farms, LLC*, 458 S.W.3d 319, 327 (Mo. 2015). "The United States Supreme Court set out a four-part test to determine if a violation of the taking clause of the Fifth Amendment has occurred: (1) Is there a property interest protected by the Fifth Amendment Taking Clause? (2) If so, does the challenged action effect a taking of that property interest? (3) If there is a taking, is it for public use? (4) If there is a taking for public use, does the statute provide for adequate compensation?" *Felling v. Wire Rope Corp. of Am.*, 854 S.W.2d 458,

462 (Mo. App. W.D. 1993) (citing *Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1000–01, 104

S.Ct. 2862, 2871–72, 81 L.Ed.2d 815 (1984))

Defendants are entitled to summary judgment on the unconstitutional takings claim

because Plaintiffs have not alleged any private property they owned was taken by the City for

private or public use. As described above in sections A and C, Plaintiffs have no constitutionally-

protected property interest in the promotions they seek. Plaintiffs do not "own" the job promotions

they have been denied, nor are they entitled to those job promotions. Nowhere in Plaintiffs' Third

Amended and Supplemental Complaint have Plaintiffs shown that they privately-owned their job

promotions. At best, the Plaintiffs had a mere interest in continued employment of their current

roles. In a permanent taking the government is granted permanent ownership of the property at

issue. *See Akers v. City of Oak Grove,* 246 S.W.3d 916 (Mo. Banc. 2008). There is no dispute here

that the potential job promotions at issue here fall within the City's civil service jobs, jobs that will

continue to exist long after Plaintiffs are no longer working for the City. Therefore, this Court

should find in favor of Defendants that Plaintiffs do not, and will not be able to produce sufficient

evidence that their job promotions were private property for purposes of a takings claim in Count

V.

F.      **Count VI: Defendants are entitled to summary judgment on Count VI because no
        law of the state or change in state law for purposes of the Contracts Clause has
        impaired any contractual rights of Plaintiffs.**

"To succeed on a claim alleging violation of article I, section 13, a plaintiff must show:

(1) "a contractual relationship"; (2) "a change in law [that] impairs that contractual relationship";

and (3) that "the impairment is substantial."" *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO,

Council 61 v. State*, 653 S.W.3d 111, 127 (Mo. 2022) (quoting *Gen. Motors Corp. v. Romein*, 503

U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)). Here, an element of an unconstitutional

14

impairment of contract claim is that there is a change in the law, which is not the case here, nor have the Plaintiffs sufficient evidence of any law to establish a claim pursuant to U.S. or Missouri Constitutions. An amendment to a contract simply is not a change in the law, and therefore, Plaintiffs claim fails.

The law is unclear that Plaintiffs can even assert a claim for unconstitutional impairment of contract as third-party beneficiaries. "It appears that courts are split on whether a Contracts Clause claim can be brought by third-party beneficiaries." *Andary v. USAA Cas. Ins. Co.*, 512 Mich. 207, 303 (2023) (comparing *In re DeWitt Estate*, 54 P.3d 849, 859 (Colo, 2002) (en banc) with *United States v. Manning*, 434 F Supp 2d 988, 1023 (ED Wash, 2006). Regardless, even if Plaintiffs have standing, their claim fails because no state law has impaired their contractual rights.

In Missouri, courts have held that a change in law that affected the terms of a prior contract between parties was not enough to establish a change in state law sufficient to establish a contractual relationship for purposes of the Contracts Clause and most importantly, that a prior agreement may not be used as evidence of a law of the state or change in state law for purposes of the Contracts Clause. *See KITC Homes, LLC v. City of Richmond Heights*, 642 S.W.3d 318, 326 (Mo. 2022).  In *KITC Homes, LLC*, the developer attempted to sue the city alleging that a prior agreement between him and the city established a contractual relationship, and that the City issued a special tax bill which "substantially impaired" and "frustrated the purpose" of the alleged contract. The court found in favor of the city because the plaintiff failed to allege any facts or cite any law which indicated that the issuance of a special tax bill may be regarded as a law of the state or change in state law for purposes of the Contracts Clause. *Id.* at 32.

Here, just as the court reasoned in *KITC Homes, LLC*, citing to a previous contract and claiming that a new law impaired those rights will still not be sufficient evidence of a law of the

state or change in state law for purposes of the Contracts Clause. In *KITC Homes, LLC*, the plaintiff alleged that a special tax bill substantially impaired a previous contract it had with the local government, and that the special tax bill frustrated the purpose of the alleged contract, however, this was not enough for the court to find that there was a change of a law of the state or change in state law for purposes of an unconstitutional impairment of contract claim. Similarly, this Court should find in favor of Defendants that, an amendment to a contract is simply not a law of the state or a change in state law. Therefore, this Court should find in favor of Defendants on Count VI.

## V.      CONCLUSION

Defendants are entitled to summary judgment because Plaintiffs have not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find that they were entitled to a job promotion, that the Defendants violated their civil rights by not promoting them to Fire Captain or Fire Battalion Chief, that they are third-party beneficiaries under the Agreement, and that the 2023 amendment to the Agreement is not valid. For the foregoing reasons, Defendants request this Court enter summary judgment in their favor on all counts.

Respectfully submitted,

**SHEENA HAMILTON,
CITY COUNSELOR**

*/s/ Curtis T. Haynes*
Alexis Silsbe #64637 (MO)
Curtis T. Haynes #73093 (MO)
City of St. Louis Law Department
Room 314, City Hall
1200 Market Street
St. Louis, MO 63103
Tel: (314) 622-3361
silsbe@stlouis-mo.gov
haynescu@stlouis-mo.gov
**ATTORNEYS FOR DEFENDANTS**