UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT EVELAND, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:22 CV 1068 CDP |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs are seventeen City of St. Louis firefighters who claim that the City

and its Director of Public Safety wrongfully prevented Fire Chief Dennis

Jenkerson from promoting them to Battalion Chief or Fire Captain.  Their Third

Amended and Supplemental Complaint asserts violations of federal and state law

and relies primarily on a 2017 settlement agreement between the City, an

organization representing Black firefighters,[1] and nearly 150 firefighters, two of

whom are plaintiffs in this case.  That settlement agreement was modified on the

eve of the preliminary injunction hearing held in this case, and plaintiffs seek to

---

[1] That organization is Firefighters Institute for Racial Equality, Inc., or F.I.R.E.  Plaintiffs joined
F.I.R.E. as a defendant "because Plaintiffs believe it is an interested Party in this controversy,
although no relief is sought from F.I.R.E."  ECF 16 at p. 2.  F.I.R.E. entered an appearance in the
case but never filed a responsive pleading to the Third Amended and Supplemental Complaint or
otherwise participated in this case.  Upon motion of the plaintiffs and without opposition from
defendants, the Court ordered the entry of default against F.I.R.E. on February 21, 2024.  ECF
78.

invalidate that amendment.  Before me now are cross-motions for summary judgment.  Plaintiffs seek judgment only on two counts of their complaint relating to the settlement agreement, while defendants City and Charles Coyle contend they are entitled to judgment as a matter of law on all counts asserted in the complaint.

Following the completion of summary judgment briefing and more than one year after the deadline to amend their complaint expired, *see* ECF 23, plaintiffs now seek leave to file a Fourth Amended and Supplemental Complaint.  ECF 82. Plaintiffs propose to join additional plaintiffs as parties to this lawsuit and to include allegations regarding a September 2023 promotional exam and November 2023 changes to their positions.  ECF 82-2.

Although courts should grant leave freely "when justice so requires," *see* Fed. R. Civ. P. 15(a)(2), leave to amend will be denied as untimely given the advanced procedural posture of this case (discovery has long since closed and summary judgment motions are fully briefed in this two-year old case) and the absence of due diligence by plaintiffs to seek leave to amend.  Plaintiffs offer no explanation for why they waited until July of 2024 to seek leave to include allegations relating to events which allegedly occurred in September and November of 2023, nor do they explain the basis for the assertion that "claims have accrued" for the proposed additional plaintiffs.

Plaintiffs have not shown "exceptional circumstances" required by the Court's April 10, 2023 Case Management Order to amend the pleadings deadline in this case, and upon due consideration the Court will deny leave to amend. *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.,* 406 F.3d 1052, 1065–66 (8th Cir. 2005) (applying Rule 15(a) and affirming a denial of a motion for leave to file an untimely third amended complaint); *Hammer v. City of Osage Beach, Mo.,* 318 F.3d 832, 844 (8th Cir. 2003) (stating that "there is no absolute right to amend a pleading," and affirming a denial of a motion for leave to amend filed after discovery had closed and after a defendant had moved for summary judgment); *Dairy Farmers of Am., Inc. v. Travelers Ins. Co.,* 292 F.3d 567, 576 (8th Cir. 2002) ("A district court does not abuse its discretion in refusing to allow amendment of pleadings if the amendment is offered after summary judgment has been granted against the party, and no valid reason is shown for the failure to present the new theory at an earlier time.") (cleaned up); *In re Milk Prods. Antitrust Litig.,* 195 F.3d 430, 437–38 (8th Cir. 1999) (affirming denial of motion for leave to amend filed "substantially out of time" under court's scheduling order). Accordingly, the Court does not consider the allegations made in the proposed Fourth Amended and Supplemental Complaint when ruling on the pending motions.

For the reasons set forth herein, defendants are entitled to summary judgment on the federal claims raised in the Third Amended and Supplemental Complaint. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them without prejudice.

Standards Governing Summary Judgment

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011). The Court must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007). The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the burden of informing the Court of the basis of its motion and demonstrating the absence of an issue for trial. *Celotex Corp.*, 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party must either proffer evidence in the record that demonstrates a genuine issue of material fact or show that the moving party's proffer does not establish the absence

of a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248; *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004).  The substantive law determines which facts are critical and which are irrelevant.  *Anderson*, 477 U.S. at 248.  Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.*

In determining a motion for summary judgment, The Court considers only those facts that can be supported by admissible evidence.  Fed. R. Civ. P. 56(c); *Woods v. Wills*, 400 F. Supp. 2d 1145, 1175-76 (E.D. Mo. 2005).  Testimony that would not be admissible is ignored.  *Shaver v. Independent Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003).  Under these standards the Court reviews the pending motions.

Factual and Procedural Background

The City's Fire Department is a division of the Department of Public Safety. The Fire Department is run by the Chief (currently Jenkerson), and the Chief is appointed by the Director of Public Safety (Director).  Dan Isom was the Director in 2022, and Charles Coyle is the current Director and a named defendant in this case.

Promotions within the St. Louis Fire Department are governed by the City's Civil Service Plan, which requires all promotions to be based on merit and fitness,

ascertained by examination.  When an opening for a promotion occurs, the Fire Chief submits a "Personnel Requisition" form to the Director, who then verifies that the vacancy exists and the promotion is covered by the department's Table of Organization, which shows positions authorized by that year's budget.  The Director makes the final decision on whether to make promotions in the Fire Department.

Once the Director approves the requisition, the Director of Personnel sends the Fire Chief, who is the "appointing authority" under the Civil Service Plan, a list of the six eligible applicants who scored the highest on the most recent promotional exam.  The Fire Chief interviews the six candidates and selects one of them.  Chief Jenkerson has always selected the person who scored highest on the exam.

The Director of Personnel is responsible for administering promotion examinations and generating a list of eligible promotion candidates using the results of the test.  The record before the Court reveals that the last promotion examination for Fire Captain and Battalion Chief was conducted in 2013.[2]

---

[2] Although plaintiffs indicate in their motion for leave to amend and proposed Fourth Amended and Supplemental Complaint that a written promotional exam was administered in September of 2023, *see* ECF 82, 83, that evidence is not properly before the Court and has not been considered as leave to amend is denied.  In any event, neither test is material to a resolution of the federal claims at issue before the Court.

In 2015, the Firefighters Institute for Racial Equality (F.I.R.E.) sued the City in this Court alleging that the test discriminated against Black promotional candidates. *Green v. City of St. Louis*. Case No. 4:15CV1433 RWS. The parties to the case reached a settlement on August 10, 2017, and the case was dismissed. ECF 72-1 in Case No. 4:15CV1433 RWS.[3] Only two of the plaintiffs in this case (Licole McKinney and Michael Vincent) were parties in the *Green* case. However, all plaintiffs are on the 2013 eligible list for promotion.[4]

The settlement agreement in the *Green* case (Settlement Agreement) is attached as Exhibit 1 to plaintiff's Second Amended Complaint. ECF 16-1. It is "entered into between and among plaintiffs Percy Green III, Abram Pruitt, Jr., and The Firefighters Institute for Racial Equality (F.I.R.E.) as authorized agent for the remaining plaintiffs (jointly, FIRE) and defendant the City of St. Louis." ECF 16-1 at 1. Thus, FIRE was entering the Settlement Agreement on behalf of (among others) McKinney and Vincent. The Settlement Agreement recites that it was entered to resolve claims about the City's 2013 promotional exams for Captain and

---

[3] As previously stated in the Memorandum and Order denying preliminary injunctive relief, the fire department's promotional exams have been the subject of litigation for decades. ECF 43 at 3 n.1.

[4] Plaintiffs Steven Nienhouse, Darren Williams, Andrew Woodhead, Donald Champ, Licole McKinney, Nick Scanga, Timothy Schultz, Ted Chrun, Kevin Herdler, Michael Vincent, Ted Ellis, Joseph Nea, Jessica Jackson, Dave Hummel, and Chad Crafton are Fire Privates, and are on the eligible list for promotion to Fire Captain. ECF 70-8. Plaintiffs Robert Eveland, William Ellner, John Fischer, and Kevin Koch are Fire Captains, and are on the eligible list for promotion to Battalion Chief. ECF 70-9.

Battalion Chief in the City's Fire Department and to put into place "a set of agreed-upon future promotional examination practices intended and designed to achieve the parties' four mutually-shared goals of: ensuring that future promotional examinations for Captain and Battalion Chief in the City's Fire Department are valid and fair and do not unlawfully discriminate against any promotional candidate or candidates on the basis of race;  ensuring transparency in the exam process; making reasonable efforts to ensure that future exams are perceived by future promotional candidates, the City's Firefighters as a whole, and by the broader community in the City as valid, fair, and non-discriminatory; and avoiding litigation regarding future exams."

The Settlement Agreement provides that the 2013 eligible lists for Captain and Battalion Chief would continue to be used for promotions until new lists were developed based on a new promotional exam.  The City agreed it would not intentionally delay promotions in anticipation of new promotional exams nor intentionally delay the next exam.  The City also promised to use its best efforts to hold the next exams by December of 2018, and to schedule future exams approximately three years after certification of the eligible lists from the previous exams, contingent upon budgetary concerns.

The Settlement Agreement is to remain in effect for the next four exam cycles.  However, in paragraph 14, the parties contemplate amendments may be

necessary to address the "agreements contained herein, any success and problems with the Exams and the Eligible Lists resulting from the Exams, and any changes in testing techniques and best practices to consider whether any of the specific agreements contained herein should be modified or whether additional requirements and terms and conditions should be added." No change to the Settlement Agreement would become effective unless "it is made in writing and is signed by the then duly authorized representatives of the City and F.I.R.E." Attorney Joe Jacobson signed the Settlement Agreement as "attorney for plaintiffs," including McKinney and Vincent.[5]

Despite the language of the Settlement Agreement, the record properly before the Court does not reflect that any new exams have been given. At the hearing held before this Court on plaintiffs' motion for preliminary injunction last April, a City witness testified that initially the Board of Aldermen failed to budget money for a consultant to prepare the test and that the COVID pandemic caused additional delays. Witnesses also testified that the Fire Department hired a consultant who was developing a new test, and the City hoped to have the test administered and to have results certified within seven or eight months.

---

[5] Defendants incorrectly assert that none of the plaintiffs were parties to the Settlement Agreement. As stated above, McKinney and Vincent were named plaintiffs in the *Green* case and the Settlement Agreement was entered into on their behalf by FIRE as their "authorized agent" and signed on their behalf by their attorney, Joe Jacobson. To the extent the Court indicated otherwise in denying preliminary injunctive relief, that finding is not binding. *U.S. Securities and Exchange Com'n v. Zahareas*, 272 F.3d 1102, 1105 (8th Cir. 2001).

Over 75 firefighters were promoted using the 2013 eligibility list.  In January of 2022 Director Isom began denying Chief Jenkerson's requisition requests to fill vacancies in the department and informed him that no promotions would be made until a new exam produced new eligible lists.  Witnesses at the preliminary injunction hearing testified that the Director wanted to review the entire command structure at the department, the 2013 list was too old and did not give newer employees a chance to apply for promotion, the candidates remaining on the 2013 eligibility list scored relatively low on the test (although they all had passing scores), and a new test was in the process of being developed.  Coyle concurred with this decision.

Because someone needs to perform the supervisory work left by the existing vacancies, Chief Jenkerson appointed sixteen of the seventeen plaintiffs in this case to serve as "Acting" Fire Captains and Battalion Chiefs.  Chief Jenkerson testified that he appointed plaintiffs to these roles because they were the highest scoring candidates on the 2013 exam and that he would have promoted them if the Director approved his requisition requests.  He also testified that he will recommend the remaining plaintiff for the next vacancy that occurs.

Plaintiff Robert Eveland has been serving as Acting Battalion Chief since January 30, 2022; his position was the first vacancy that the Director refused to fill. The other plaintiffs began their Acting positions between January of 2022 through

February of 2023.[6]  While serving in these acting roles, none of the plaintiffs receive the pay or benefits they would be receiving if they had actually been promoted to those positions.  Director Coyle, who was the Deputy Chief of the Fire Department before his appointment, testified that it is "required" by the Fire Department that a firefighter act in the next higher position if necessary.  ECF 55 at 106-07.  Director Coyle testified that it was "fair" to require this of firefighters without additional compensation or benefits because "you learn more."  ECF 55 at 107-08.  Director Coyle served in an "Acting" position, but only for some period of time between 1999-2000.  ECF 55 at 97.

Plaintiffs filed their motion for preliminary injunction on March 27, 2023. On April 14, 2023 (the Friday before the preliminary injunction hearing was set), "Percy Green, III, Abe Pruitt, Jr., and The Firefighters Institute for Racial Equality (F.I.R.E., jointly, FIRE) and the City of St. Louis" signed a "First Amendment to Settlement Agreement" bearing the caption of the *Green* case, 4:15CV1433 RWS. ECF 29-1 at 1.  These signatories are not identical to the signatories of the Settlement Agreement, which included the recital that FIRE was acting "as authorized agent for the remaining plaintiffs."  Nor did Joe Jacobson sign the

---

[6]Plaintiffs indicated in their recent motion for leave to amend that Coyle eliminated these "Acting" positions in November of 2023 but that they continued to perform the job duties anyway.  ECF 82.  However, for the reasons previously discussed, this evidence is not considered as it is not properly before the Court.  In addition, it is not material to a resolution of the pending federal claims.

document as "attorney for plaintiffs."  Instead, he executed the First Amendment to the Settlement Agreement solely in his capacity as "attorney for FIRE."  ECF 29-1 at 4.

The First Amendment to the Settlement Agreement states that, because of the passage of time, the eligibility list from 2013 would no longer be used.  It also notes that, at the time the Settlement Agreement was entered, the parties expected a new exam and eligibility list would be developed by 2018, but that did not happen. As a result, "firefighters who joined the Department since the 2013 promotional exam have not had the opportunity to be considered" for promotion.  ECF 29-1 at 2.  Accordingly, Section 1 of the Settlement Agreement is deleted and replaced with the following:

*Article First*

1. **Former Eligible Lists**.  The Eligible Lists for Fire Captain and Fire Battalion Chief generated as a result of the disputed 2013 promotional examinations will cease to be used for promotions effective immediately and no additional promotions to Fire Captain or Fire Battalion Chiefs will be made using the 2013 Eligible Lists.  If new Eligible Lists are not in place and available for use by March 31, 2024, the parties will meet with Local 73 to determine how to proceed with future promotions to Fire Captain and Fire Battalion Chief.

Section 2 of the Settlement Agreement is deleted and replaced with the following:

*Article Second*

2. **Schedule for next Exams**.  The City will use its best efforts to hold the next Exams as rapidly as possible consistent with sound testing design and

administration.  The City will ensure that the Exam process, including the hiring of the Consultant, is fully funded in the City's budget until the next Exams are completed.  A Consultant has been retained and will assist the City in proceeding with the Exam process in full compliance with the procedures stated in the Settlement Agreement.

ECF 29-1 at 3-4.  The same parties to the First Amendment to Settlement Agreement filed a Second Amendment to Settlement Agreement in the *Green* case on March 22, 2024, in which they again modified the Settlement Agreement.  This time, they agreed to the use of two member assessment panels for the Fire Captain and Fire Battalion Chiefs exams to be administered in 2024.[7]  ECF 83 in Case No. 4:15CV1433 RWS.

Count I of plaintiffs' Third Amended and Supplemental Complaint alleges a violation of their Fourteenth Amendment Due Process rights under 42 U.S.C. § 1983.  Count II alleges breach of contract based on the same facts.  Count III alleges that defendants' conduct also violates their procedural and substantive due process rights under the Missouri Constitution.  Count IV seeks a declaration that the First Amendment to Settlement Agreement is void.  Count V alleges that the failure to promote amounts to taking in violation of the Fifth Amendment, made applicable here via the Fourteenth Amendment, and the Missouri Constitution.  Count VI alleges that the First Amendment to Settlement Agreement constitutes an

---

[7] The parties did not notify the Court of the Second Amended Settlement Agreement, but the Court may take judicial notice of its own files.

unconstitutional impairment of contract in violation of the Contract Clause of article I, section 10 of the U.S. Constitution and Missouri's Constitution.

## Discussion

The Court has federal question subject matter jurisdiction over this action based on three federal claims:  a violation of due process rights (Count I); a taking in violation of the Fifth Amendment (Count V); and, an unconstitutional impairment of contract in violation of the Contract Clause of article I, section 10 of the U.S. Constitution (Count VI).[8]  Two of those claims – the due process claim in Count I and the takings claim in Count V – require a protectible property interest to succeed.[9]   Because plaintiffs have no protected property interest in promotions, these claims fail as a matter of law.

Count I: Due Process

In Count I, plaintiffs allege that their procedural and substantive due process rights have been violated.  The procedural component of the Due Process Clause "provides the familiar guarantee of fair procedures, prohibiting the deprivation of life, liberty, or property by a State without due process of law."  *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 872-73 (8th Cir. 2007).  The substantive

---

[8] Counts V and VI also assert violations of state law.

[9] As explained below, plaintiffs could also succeed on Count I if there was a deprivation of their liberty interest, but the facts do not support a protected liberty interest at stake here, either.

component "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  For either claim, plaintiffs must show they were deprived of a property or liberty interest protected by the Fourteenth Amendment. *See Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 445-46 (8th Cir. 1995) ("Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated.").

A protected liberty interest under the Due Process Clause might arise if the City, in declining to promote plaintiffs, made charges against them that damaged their standing and associations in the community.  *See Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 573 (1972).  Although plaintiff Tim Schultz testified during the preliminary injunction hearing that serving in an acting role indicates to his peers that he is not worthy of the bona fide role, and Eveland testified that acting officers are treated like they are just filling in or lack the authority to drive long term change, plaintiffs do not make any argument regarding a protected liberty interest in opposition to defendants' motion for summary judgment, and the record does not support such a claim as a matter of law.  There is no evidence that the City refused to promote any of the plaintiffs based on charges of dishonesty or immorality such as to place plaintiffs' "good names,

- 15 -

reputations, honor, or integrity" at stake. *Id.* (cleaned up).  And while some plaintiffs may dislike being in "Acting" positions, there is no dispute that plaintiffs retain their current positions with the City and are eligible to take the next promotional examination when offered.  Plaintiffs have failed to demonstrate as a matter of law that they have a protected liberty interest in promotions.

To succeed on their due process claim, then, they must establish that they have a protected property interest in promotions.  *Meyer v. City of Joplin*, 281 F.3d 759, 761 (8th Cir. 2002).  "Where no such interest exists, there can be no due process violation."  *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (cleaned up).  A property interest is not created by the Constitution and cannot arise from "unilateral expectations."  *Meyer*, 281 F.3d at 761 (cleaned up).  Instead, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Roth*, 408 U.S. at 577.  To determine whether plaintiffs have a property interest in promotions, the Court looks first to the City's Civil Service Rules to see how promotions within the Fire Department are awarded.

Promotions within the St. Louis Fire Department are governed by the City's Civil Service Plan.  When an opening for a promotion occurs, the Fire Chief submits a "Personnel Requisition" form to the Director, who then verifies that the

vacancy exists and the promotion is covered by the department's Table of Organization, which shows positions authorized by that year's budget. The Director makes the final decision on whether to make promotions in the Fire Department.

Once the Director approves the requisition, the Director of Personnel sends the Fire Chief, who is the "appointing authority" under the Civil Service Plan, a list of the six eligible applicants who scored the highest on the most recent promotional exam. The Fire Chief interviews the six candidates and selects one of them. There is no Civil Service Rule vesting a right to promotion to a firefighter based upon ranking on an eligibility list or any other criteria (such as seniority), either. While it is true that Chief Jenkerson has historically selected the person who scored highest on the exam for promotion, under Missouri law the Fire Chief's decision-making power remains subject to ultimate oversight by the Director. *George v. Civil Service Commission of City of St. Louis*, 318 S.W.3d 266, 270-71 (Mo. Ct. App. 2010). Thus, the current Fire Chief's practice of selecting the candidate who scored highest on the exam does not create a vested property right in promotions that plaintiffs may enforce via the Due Process Clause. *See Mummelthie v. City of Mason, Iowa*, 873 F. Supp. 1293, 1331 (N.D. Iowa 1995) (property interest arises only when an employer's discretion is "clearly limited so that the employee cannot be denied employment benefits unless specific

conditions are met."); *Davenport v. Bd. of Trustees of Univ. of Ark.*, 2008 WL 11450877, at *9-10 (E.D. Ark. Jan. 23, 2008) (policy vesting department head with discretion to consider an employer's application and other criteria for promotion does not create vested property interest entitled to due process protection);

Because the Civil Service Rules give the Director discretion on whether to make promotions and give the Fire Chief discretion to select from six certified candidates on the eligibility list, plaintiffs do not have a protected property interest in a promotion. *See Meyer*, 281 F.3d at 762 ("When an employer may consider subjective and objective factors in making promotion decisions, an applicant's expectation of promotion based on test rankings or prior employment fails to rise to the level of a property interest entitled to constitutional protection.") (cleaned up).

Plaintiffs also rely on the Settlement Agreement as a source of their property interest in promotions. Even though the Settlement Agreement is enforceable by at least McKinney and Vincent,[10] it must still create a protectible property interest *in promotions* to give rise to the due process claim alleged by plaintiffs. As a matter of law, however, it does not.

---

[10] As McKinney and Vincent are parties to the Settlement Agreement, their standing to enforce its terms is not in doubt, unlike the remaining plaintiffs who seek to enforce the Settlement Agreement as third-party beneficiaries. Thus if the Settlement Agreement does not grant a protectible property interest in promotions to at least McKinney and Vincent, the Court need not – and therefore does not – reach the issue of whether the remaining plaintiffs are third-party beneficiaries capable of enforcing the Settlement Agreement as a matter of Missouri law.

Under Missouri law, the "interpretation of a release or settlement agreement is governed by the same principles applicable to any other contractual agreement, and the primary rule of construction is that the intention of the parties shall govern." *Andes v. Albano*, 853 S.W.2d 936, 941 (Mo. banc 1993) (cleaned up); *see also Smith v. Keystone Mut. Ins. Co.*, 579 S.W.3d 275, 280 (Mo. Ct. App. 2019). Plain language "forecloses speculation about intent of the parties." *Holmes v. Multimedia KSDK, Inc.*, 395 S.W.3d 557, 560 (Mo. Ct. App. 2013) (cleaned up).

The Settlement Agreement unambiguously fails to vest any firefighter with a right to promotion. The recitals of the Settlement Agreement make clear that it was entered to resolve claims about the City's 2013 promotional exams for Captain and Battalion Chief in the City's Fire Department and to put into place "a set of agreed-upon future promotional examination practices intended and designed to achieve the parties' four mutually- shared goals of: ensuring that future promotional examinations for Captain and Battalion Chief in the City's Fire Department are valid and fair and do not unlawfully discriminate against any promotional candidate or candidates on the basis of race; ensuring transparency in the exam process; making reasonable efforts to ensure that future exams are perceived by future promotional candidates, the City's Firefighters as a whole, and by the broader community in the City as valid, fair, and non-discriminatory; and avoiding litigation regarding future exams." The Settlement Agreement does not

mandate *any* promotions or divest the Director of his discretion to approve promotions for the Fire Department. At best, it requires the City to use the 2013 eligible lists for promotions, if made, until a new test is administered, a process the parties intended to take place long before now. But that obligation does not create a corresponding enforceable right to a promotion as a matter of law.[11]

Without a protected property interest in promotions, plaintiffs' due process claim asserted in Count I fails as a matter of law and must be dismissed. Defendants' motion for summary judgment on Count I of the Third Amended and Supplemental Complaint is granted.

Count V- Takings Clause

In Count V, plaintiffs claim that the failure to promote them amounts to a taking of their property without just compensation in violation of their fifth amendment rights, applied to defendants here by the Fourteenth Amendment. The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend V. The Takings clause "is designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.*, 544

---

[11] The Court decides *only* that plaintiffs do not have a constitutionally protected property interest in promotions under the terms of the Settlement Agreement. The Court does not decide whether defendants have breached the terms of the Settlement Agreement under state law.

U.S. 528, 537 (2005) (cleaned up).  To sustain a Takings Clause claim, plaintiffs must first demonstrate they have a property interest that the Takings Clause protects.  *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 439 (8th Cir. 2007).  Here, they do not.

Assuming for purposes of this motion only that promotions could constitute a property interest subject to the Takings Clause, for the reasons set forth above plaintiffs do not have a protected property interest in being promoted.  As plaintiffs allege no other private property interest that was taken by the City, defendants are entitled to judgment as a matter of law on the federal claim asserted in Count V of the Third Amended and Supplemental Complaint.

Count VI: Contract Clause

Plaintiffs' final federal claim is that the First Amendment to Settlement Agreement violates the Contract Clause because it purports to eliminate the use of the 2013 eligibility lists for promotions.  The Contract Clause provides that "no state shall pass any law impairing the obligation of contracts." U.S. Const. art. I, § 10, cl. 1 (cleaned up).  A three-part test determines whether a statute violates the Contract Clause. "The first question is whether the state law has, in fact, operated as a substantial impairment on pre-existing contractual relationships." *Equip. Mfrs. Inst. v. Janklow,* 300 F.3d 842, 850 (8th Cir. 2002).  This question "has three components: whether there is a contractual relationship, whether a change in law

impairs that contractual relationship, and whether the impairment is substantial."

*Gen. Motors Corp. v. Romein,* 503 U.S. 181, 186 (1992).

The Court assumes for purposes of this motion only that plaintiffs may bring

a cause of action for a Contract Clause violation under § 1983.  *See Heights*

*Apartments, LLC v. Walz*, 30 F.4th 720, 728 (8th Cir. 2022).  Defendants are

entitled to judgment as a matter of law because the First Amendment to Settlement

Agreement is not a state law subject to the Contract Clause.   Plaintiffs have

pointed to no case (and the Court's research has uncovered none) in which a court

has concluded that a government entity's execution of a private contract

constituted a "state law" sufficient to support a Contract Clause claim.  What the

courts *have* concluded, however, is that a simple breach of contract by a

governmental entity does not impair the obligation of the breached contract in

violation of the Contract Clause; rather, the state, like any private party, must be

able to breach contracts without turning every breach into a violation of the federal

Constitution.  "An individual breach of contract [by a governmental entity] does

not reach constitutional dimensions and create a cause of action based on the

contracts clause." *Jackson Sawmill Co., Inc. v. U.S.*, 580 F.2d 302, 311–12 (8th

Cir. 1978); *see also TM Park Ave. Assocs. v. Pataki*, 214 F.3d 344, 348–49 (2d Cir.

2000); *Charles v. Baesler,* 910 F.2d 1349, 1356 (6th Cir.1990) ("A simple breach

of contract by a governmental entity does not impair the obligation of the breached

contract."); *E & E Hauling, Inc. v. Forest Preserve Dist. Of Du Page Co., Ill.,* 613 F.2d 675, 678 (7th Cir. 1980) ("Mere refusal to perform a contract by a state does not raise a constitutional issue, but when a state uses its legislative authority to impair a contract a constitutional claim is stated.").

Here, the Court need not, and therefore does not, decide whether the City's modification of the Settlement Agreement amounts to a breach of that agreement under state law for which some, if not all, of the plaintiffs may seek damages and/or equitable relief.  However, in so doing the City did not "pass any law" impairing contractual obligations.  For that reason, defendants are entitled to judgment as a matter of law on Count VI of the Third Amended and Supplemental Complaint.

<u>Remaining State Law Claims</u>

The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining state law claims.  "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed."  *In re Pre-Filled Propane Tank Antitrust Litigation*, 893 F.3d 1047, 1060 (8th Cir. 2018).  The statute provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "'When a district court dismisses federal claims over which it has original jurisdiction, the balance of interests usually will point toward declining to exercise jurisdiction over the remaining state law claims.'" *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC,* 781 F.3d 1003, 1016–17 (8th Cir. 2015) (quoting *In re Canadian Import Antitrust Litig.,* 470 F.3d 785, 792 (8th Cir. 2006)).  Indeed, the district court may decline jurisdiction over state law claims after granting summary judgment on the federal claims, even if discovery is complete.  *D.J.M. ex rel. D.M. v. Hannibal Pub. Sch. Dist. No. 60*, 647 F.3d 754, 767 (8th Cir. 2011).  The Eighth Circuit has "stress[ed] the need to exercise judicial restraint and avoid state law issues wherever possible."  *Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000).  "The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity."  *Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

As all federal claims have now been dismissed, I will exercise my discretion to dismiss without prejudice the remaining state law claims, which depend solely on determinations of state law, including Missouri's Constitution. Missouri courts should have the opportunity to rule on issues of purely state law when possible. *See Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) ("Where, as here, resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction.") (cleaned up); *Farris v. Exotic Rubber and Plastics of Minn., Inc.*, 165 F. Supp. 2d 916, 919 (D. Minn. 2001) (citing *Baggett v. First Nat'l Bank*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.")).

Comity points strongly in favor of dismissal of the state law claims here, where a Missouri municipality is alleged to have breached its contractual obligations to its own employees, forced its firefighters to work in higher ranking positions for extended periods of time without providing them corresponding pay or benefits, and then modified a settlement agreement in an effort to foreclose plaintiffs' claims in this case. Missouri courts undoubtedly have a strong interest in adjudicating these claims, and the public interest is best served if these claims are permitted to proceed in state court.

Finally, although the Clerk of Court entered a default against defendant F.I.R.E. on February 23, 2024, ECF 78, based on the Court's rulings today the Court declines to enter default judgment against defendant F.I.R.E. to the extent that plaintiffs assert federal claims against defendant F.I.R.E.  Given that plaintiffs' Third Amended and Supplemental Complaint does not specify which counts are being asserted against defendant F.I.R.E. and seeks no relief from defendant F.I.R.E., the Court sets aside the entry of default entered against defendant F.I.R.E., enters summary judgment in favor of defendant F.I.R.E. to the same extent granted to the City and Coyle, and dismisses any remaining state claims asserted against defendant F.I.R.E. without prejudice for the same reasons set forth above.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for leave to file a Fourth Amended and Supplemental Complaint [82] is denied.

**IT IS FURTHER ORDERED** that the entry of default entered against defendant Firefighters Institute for Racial Equality, Inc. on February 23, 2024, [79] is set aside.

**IT IS FURTHER ORDERED** that plaintiffs' motion for partial summary judgment [62] is denied as moot**.**

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [70] is granted in favor of defendants City of St. Louis, Charles Coyle, and Firefighters Institute for Racial Equality, Inc. <u>only</u> as to Count I and the federal claims raised in Counts V and VI of the Third Amended and Supplemental Complaint, and is denied as moot in all other respects.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over the remaining state-law claims.

A separate Judgment and Order of Dismissal is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of July, 2024.